# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: Roman Catholic Church of the Archdiocese of Santa Fe, | ) ) ) Chapter 11 |
| Debtor-in-Possession. | ) ) ) Bankruptcy Case No. 18-13027-t11 ) ) Adv. Proc. No. _____ ) |
| Official Committee of Unsecured Creditors, Plaintiff, v. The Roman Catholic Church of the Archdiocese of Santa Fe, Rev. Msgr. Lambert J. Luna, Rev. John Cannon, Rev. Timothy A. Martinez, Rev. Clarence Maes, Rev. John Trambley, Very Rev. James Marshall, Rev. Msgr. Bennett J. Voorhies, Tony Salgado, Jennifer Cantrell, Bernard E. "Gig" Brummell, and Stan Sluder, solely in their capacity as trustees of The Archdiocese of Santa Fe Deposit and Loan Fund, Nativity of the Bless Virgin Mary, Our Lady of the Annunciation, Our Lady of the Assumption – Albuquerque, Risen Savior Catholic Community, Our Lady of Belen, Immaculate Heart of Mary, San Clemente, St. John Vianney Church, St. Thomas Aquinas, and San Miguel, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS; DECLARATORY AND INJUNCTIVE RELIEF

The Official Committee of Unsecured Creditors (the **"Committee"**) of the Roman

Catholic Church of the Archdiocese of Santa Fe, a New Mexico non-profit corporation (**"ASF"**), brings

this adversary proceeding against the defendants named herein pursuant to the authority granted to the

Committee by the *Order on the Unsecured Creditors Committee's Motion for Exclusive and*

*Irrevocable Authority to Commence, Prosecute and Settle Adversary Proceedings* and the related

opinion entered on October 9, 2020 [Docket Nos. 514-15] (the **"Order Conferring Standing"**). The Committee alleges as follows:

## INTRODUCTION

1.      Prior to January 1, 2013, the parishes of ASF (**"Parishes"**) were not incorporated.  They did not exist as separate legal entities and could not hold either legal or beneficial interests in property.

2.      Prior to January 1, 2013, ASF held both the legal and beneficial interests in its real property and its financial assets.

3.      Beginning 2007, when it became concerned that its assets were exposed to the claims of its creditors, including the survivors of clergy sex abuse (**"Survivors"**), ASF began to formulate a fraudulent asset protection scheme to insulate its assets from the claims of creditors, while still maintaining complete control over the assets.

4.      This scheme involved a corporate restructuring (**"Restructuring"**) consisting of, among other things, the incorporation of its previously unincorporated Parishes and the formation of two trusts, settled, controlled and revocable by ASF.  ASF transferred certain financial assets to a trust entitled, "Archdiocese of Santa Fe Deposit and Loan Fund" (the "**DLF Trust**"), and certain real estate assets to the other trust and designated itself, its Parishes, and other affiliated entities as beneficiaries of the two trusts.  After the trusts were created and the Parishes were incorporated, ASF transferred financial assets valued at over $26 million at the time of the transfer and worth approximately $36.7 million as of the Petition Date to the DLF

DOCS_SF:102819.8 05066/002

Trust and real estate valued in excess of $170 million to the real estate trust, all without consideration.

5. The documents formalizing this scheme to transfer assets out of the reach of the Survivors and effectuate the Restructuring were executed on January 1, 2013. As of the Petition Date, the Parishes were separately incorporated, ASF's financial assets had been transferred to the DLF Trust, and some (but not all) real property was transferred to the real estate trust.

6. This complaint seeks, among other things, to avoid and recover as fraudulent ASF's transfers of financial assets to the DLF Trust as part of ASF's fraudulent scheme to put its assets out of the reach of the Survivors and its other creditors, and/or declaratory relief that the DLF Trust is void or otherwise unenforceable against ASF's estate and its creditors because it is a self-settled trust, revocable by ASF, in which ASF is a beneficiary.

7. The resolution of this litigation is critical to ASF's chapter 11 estate because it will determine the magnitude of distributions to its creditors, including the Survivors of the childhood sex abuse enabled by ASF, and whether ASF can continue to avoid being held accountable to the Survivors.

## JURISDICTION

8. This Court has jurisdiction over the instant adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334; 11 U.S.C. § 105; and Federal Rules of Bankruptcy Procedure 7001 and 7013.

9. Venue in this judicial district is appropriate pursuant to 28 U.S.C. § 1409.

10.     This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (H) and (O).

## PARTIES

11.     On or about December 18, 2018, the United States Trustee appointed, the Committee, to represent ASF's unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1).

12.     ASF is the debtor and debtor-in-possession, and, as set forth below, the sole settlor and a beneficiary of the DLF Trust.  ASF also retains the power to revoke the DLF Trust.

13.     Defendants Lambert J. Luna, John Cannon, Timothy A. Martinez, Clarence Maes, John Trambley, James Marshall, Bennett J. Voorhies, Tony Salgado, Jennifer Cantrell, Bernard E. "Gig" Brummell, and Stan Sluder, are individuals and residents of New Mexico sued herein in their capacity as the trustees (collectively, the "**Trustees**") of the DLF Trust.

14.     The following are parishes of ASF (collectively, the "**Parishes**"), each a domestic nonprofit corporation located in the State of New Mexico and, on information and belief, a purported beneficiary of the DLF Trust:

        a.     Nativity of the Blessed Virgin Mary

        b.     Our Lady of the Annunciation

        c.     Our Lady of the Assumption - Albuquerque

        d.     Risen Savior Catholic Community

        e.     Our Lady of Belen

DOCS_SF:102819.8 05066/002

> f.    Immaculate Heart of Mary
>
> g.    San Clemente
>
> h.    St. John Vianney Church
>
> i.    St. Thomas Aquinas
>
> j.    San Miguel

The foregoing Parishes are representative beneficiaries of the DLF Trust, and are not the exclusive parish beneficiaries of the DLF Trust.

## THE ASF BANKRUPTCY CASE

15.    On December 3, 2018 (the **"Petition Date"**), ASF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §101 et seq. (the **"Bankruptcy Code"**).  ASF continues to operate its business as a debtor in possession.

16.    ASF's commencement of the above-captioned bankruptcy case as of the Petition Date created an "estate" as defined in Bankruptcy Code section 541(a).

## THE DLF TRUST

17.    On January 1, 2013, ASF as the sole settlor and grantor, created the DLF Trust for the purpose of receiving its financial assets and placing them out of the reach of its creditors as part of its asset protection scheme.

18.    A true copy of the Indenture of Trust (**"Indenture"**) for the DLF Trust is attached hereto as **Exhibit A.**

19.    Paragraph 2.e of the Indenture defines "Participants" to mean ASF, its Parishes, and other affiliated entities.  Participants are the beneficiaries of the DLF Trust.

20.     Paragraph 4 of the Indenture states that the purpose of the DLF Trust is to "support the religious, charitable and educational purposes" of the Participants.

21.     Paragraph 5 of the Indenture states that control of the DLF Trust rests exclusively with the Trustees, who are appointed by and serve at the pleasure of the Archbishop of ASF.

22.     Paragraph 14 of the Indenture expressly provides that the DLF Trust may be terminated by ASF alone.  Therefore, the DLF Trust is revocable by ASF.

23.     A true copy of the Bylaws of the DLF Trust, as amended ("**Bylaws**") is attached hereto as **Exhibit B.**

24.     Paragraph 1.1 of the Bylaws states that the Archbishop may appoint *Ex-Officio* Trustees, who shall serve so long as they hold the specified office or position with ASF, subject to removal at any time by the Archbishop.  Accordingly, the Trustees hold the following positions within ASF: Vicar General, Chancellor, Members of the Executive Board of the Presbyteral Counsel of ASF, Executive Director of Finance, Chair of the Finance Council, Chair of the Investment Committee, and Chair of the Real Estate Committee.

25.     Paragraph 1.2 of the Bylaws states that up to four additional trustees may be appointed, subject to removal at any time by the Archbishop.

26.     On or about January 1, 2013, ASF, on the one hand, and the DLF Trust, by Tony Salgado as Chairman of the Trustees, on the other hand, entered into a *D&L Fund Support Services Agreement* pursuant to which ASF maintains control of assets held in the DLF Trust under the guise of providing accounting and management services.

27.     Under the D&L Fund Support Services Agreement, the DLF Trust is obligated to reimburse ASF for the costs of services.  In addition, the DLF Trust must pay to ASF the interest spread and fees associated with all loans from the DLF Trust.

28.     During the five years prior to the Petition Date, at each fiscal year end, ASF paid to itself an average of $821,000 per year from the DLF Trust based on the interest spread and fees associated with loans from the DLF Trust.

### ASF'S FRAUDULENT
### TRANSFERS TO THE DLF TRUST

29.     On or about January 1, 2013, ASF, on the one hand, and the Trustees of the DLF Trust, by Tony Salgado as Chairman, on the other hand, entered into an agreement entitled, "Transfer of Assets," pursuant to which ASF transferred to the DLF Trust all of ASF's interest in assets consisting of the "Deposit & Loan Fund" titled to and owned by ASF, and all liabilities and obligations associated therewith (collectively, the "**DLF Trust Transfers**").  The agreement does not specify the accounts or account balances transferred to the DLF Trust.  A true and correct copy of the Transfer of Assets agreement is attached hereto as **Exhibit C**.

30.     The Committee is informed and believes that the physical transfer of assets constituting the DLF Trust Transfers took place in or about June 2013.  During a meeting of the Finance Council in May 2013, the Chairman of the DLF Trust reported that new accounts had been set up and transfers of funds will take place in the first part of June.

31.     Consolidated notes to ASF's audited financials for the period ending June 2013 describe the DLF Trust Transfers as having occurred during fiscal year 2013, and further state:

Management consolidates the Trust [DLF Trust] with the Catholic Center [central administrative offices of ASF] because all management functions and accounting functions are performed by the Catholic Center under a separate management agreement; ASF approves the loans to the parishes; and some members of the governing body of the Trust are members of the governing body of the Catholic Center. Other members include members of the Archdiocesan Presbyteral Council and Finance Council.

32.     ASF's audited financial statements for the period ending June 2013 show ASF made DLF Trust Transfers of financial assets worth approximately $26.5 million.

33.     Prior to the DLF Trust Transfers, ASF did not hold the assets of the Deposit & Loan Fund in trust for the Parishes and did not characterize such assets as trust funds in its audited financial statements. Rather the notes to ASF's Consolidated Financial Statements for June 30, 2012 and 2011 show the relationship of ASF and its Parishes was analogous to that of a bank and its depositors, as ASF paid the Parishes a defined rate of return on their deposits in the Deposit & Loan Fund and ASF took the investment and loan repayment risk. Therefore, the Parishes were creditors of ASF for the amounts of their deposits in the Deposit & Loan Fund, but were not trust beneficiaries prior to the DLF Trust Transfers.

34.     After ASF made the DLF Trust Transfers, the Parishes made additional contributions of cash and assets to the DLF Trust. ASF's Statement of Financial Affairs (**"SOFA"**) reflect at Item 21 and Exhibit 6 that the DLF Trust held $36,788,015 as of the Petition Date.

35.     ASF received no value in consideration for the DLF Trust Transfers.

36.     ASF was insolvent or became insolvent shortly after the DLF Trust Transfers were made.

37.     The Restructuring was intended to avoid liability to the Survivors and otherwise shield ASF's substantial assets from the reach of creditors.  Both the planning process leading up to the Restructuring, and the Restructuring itself, exhibited multiple badges of fraud establishing ASF's actual intent to hinder, delay or defraud its creditors, including the following:

a.      ASF was subject to pending and threatened litigation when it formulated the Restructuring and made the DLF Trust Transfers.

b.       During a meeting of the Archdiocesan Consultors on September 5, 2007, the Archbishop reported on sexual abuse cases that "have had to be settled" and advised that it is important to know "that this is something that is *still being dealt with through attorneys,* insurance companies, and the Archdiocesan Finance Council."  (Emphasis added).

c.      As early as December 2007, ASF expressed concerns about veil piercing and enterprise liability.

d.      On or about May 8, 2009, during a special meeting of the College of Consultors, the Finance Council, and the Presbyteral Council of ASF, a slideshow was presented stating that the purpose of the Restructuring was to "offer our parishes (and our Archdiocese) greater protection within the context of civil litigation."

e.      On August 9, 2013, during a meeting of the Archdiocesan Pastoral Council, the Archbishop reported the existence of seventeen accusations against a priest, allegedly having happened 30 years ago.  The Archbishop acknowledged, "*In effect, there is no statute of limitations.*  This worrisome issue involves sadness… and also regarding the *new financial concerns for the ASF*."  (Emphasis added).

f.      ASF's property manager testified in a deposition that the Restructuring was meant to "protect the assets of the archdiocese so that they weren't all wide-open under the Archdiocese of Santa Fe… [T]he individual parishes could be responsible for their own assets and liabilities." [10/10/14 Deposition at 31:18-32:10; *John Doe 2 v. ASF and St. Anthony Parish,* Second Judicial Dist. of Bernalillo County, case number D-202-CV-2013-03768].

g.      The Trustees of the DLF Trust hold offices with ASF and are subject to control by the Archbishop.

h.      ASF retains control of the assets of the DLF Trust based on the required composition of the Trustees from specified ASF positions, the Archbishop's sole discretion to appoint or remove the Trustees, and pursuant to the D&L Fund Support Services Agreement.

i.      The Restructuring involved the transfer of most of ASF's financial and real estate assets.

j.      The Restructuring was based on similar restructurings of other diocese within the United States, which were all done in in response to escalating sexual abuse claims and extended limitation periods for the Survivors to bring suit.

38.      The Restructuring was initiated by ASF, alone, not the Parishes as alleged beneficiaries of the DLF Trust.  On July 10, 2012, the Presbyteral Council discussed parish incorporation and reported, "[E]very pastor will get the documents for their parish already signed by [the Archbishop]."  In this manner, the Restructuring, was presented to the Parishes as a *fiat*

*accompli* for ASF's benefit and for the purpose of shielding assets of ASF, including substantial cash and financial assets, while continuing to control such assets.

## CREDITORS OF ASF ON THE PETITION DATE

39.    Most of the Survivors had no knowledge of the DLF Trust Transfers and could not have reasonably discovered the existence, let alone the fraudulent nature, of the DLF Trust Transfers prior to one year before the Petition Date because there were no public announcements regarding the Restructuring, ASF's creditors lacked access to ASF's books and records or other financial information, and ASF's creditors had no knowledge of facts, conditions, or circumstances that would cause a reasonable person in their position to inquire regarding the existence or the fraudulent nature of the DLF Trust Transfers.

40.    Some Survivors initiated lawsuits against ASF within four years after the DLF Trust Transfers were made which lawsuits are or were still pending on the Petition Date, including the following:

a.    On December 19, 2016, a Survivor filed a lawsuit for damages, entitled *John Doe 1, et al. v. Roman Catholic Church of the Archdiocese of Santa Fe and Our Lady of Sorrows Church,* First Judicial Dist. of Santa Fe County, case number D-101-CV-2016-02908.  This action was pending on the Petition Date and stayed by ASF's bankruptcy.  The Doe plaintiffs each hold claims that are allowable unsecured claims under Bankruptcy Code section 502.

b.    On November 29, 2017, a Survivor filed a lawsuit for damages and to avoid ASF's fraudulent transfers, entitled *John Doe "70" v. Archdiocese of Santa Fe,* Second

Judicial Dist. of Bernalillo County, case number D-202-CV-2017-08542. This action was pending on the Petition Date and stayed by ASF's bankruptcy. John Doe 70 holds a claim that is an allowable unsecured claim under Bankruptcy Code section 502.

41.     As of the Petition Date, the IRS was a creditor of ASF based on unpaid payroll taxes. The IRS held an allowable unsecured claim under Bankruptcy Code section 502 until the claim was paid.

## FIRST CLAIM FOR RELIEF
### (Against the Trustees and Parishes)

**(Avoidance and Recovery of DLF Trust Transfers
Pursuant to 11 U.S.C. §§ 544(b), 26 U.S.C. § 6502(a)(1),
28 U.S.C. § 3304(b)(1)(A), N.M. Stat. § 56-10-18A(1) and 11 U.S.C. § 550)**

42.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 41 above as if fully set forth here.

43.     ASF made the DLF Trust Transfers with the intent to hinder, delay, or defraud ASF's creditors, including, but not limited to, the Survivors who had (and still have) claims against ASF for sexual abuse.

44.     ASF's creditors' claims arose either before or after the DLF Trust Transfers.

45.     The DLF Trust Transfers are avoidable pursuant to Bankruptcy Code section 544(b) and New Mexico Statute 56-10-18A(1), as well as 26 U.S.C. section 6502(a)(1) and 28 U.S.C. section 3304(b)(1)(A).

46.     The DLF Trust was the initial transferee of the DLF Trust Transfers.

47.     ASF's estate is entitled to recover the DLF Trust Transfers, or the value thereof, pursuant to Bankruptcy Code section 550.

**SECOND CLAIM FOR RELIEF**
**(Against the Trustees and Parishes)**

**(Avoidance and Recovery of DLF Trust Transfers**
**Pursuant to 11 U.S.C. §§ 544(b), 26 U.S.C. § 6502(a)(1),**
**28 U.S.C. § 3304(b)(1)(B), N.M. Stat. § 56-10-18A(2) and 11 U.S.C. § 550)**

48.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 47 above as if set forth here.

49.     ASF did not receive reasonably equivalent value in exchange for making the DLF Trust Transfers to the DLF Trust because the DLF Trust did not provide ASF with any consideration whatsoever for the DLF Trust Transfers.

50.     At the time of the DLF Trust Transfers, ASF (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of ASF were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed, that ASF would incur debts beyond its ability to pay as they became due.  Among other things, ASF's liabilities were greater than its assets due to the claims of Survivors at the time the DLF Trust Transfers were made by ASF.

51.     ASF's creditors' claims arose either before or after the DLF Trust Transfers.

52.     The DLF Trust Transfers are avoidable pursuant to Bankruptcy Code section 544(b) and New Mexico Statute section 56-10-18A(2), as well as 26 U.S.C. section 6502(a)(1) and 28 U.S.C. section 3304(b)(1)(B).

DOCS_SF:102819.8 05066/002

53.    The DLF Trust was the initial transferee of the DLF Trust Transfers.

54.    ASF's estate is entitled to recover the DLF Trust Transfers, or the value thereof, pursuant to Bankruptcy Code section 550.

### THIRD CLAIM FOR RELIEF
**(Against the Trustees and Parishes)**

**(Avoidance and Recovery of DLF Trust Transfers Pursuant to
11 U.S.C. § 544(b), 26 U.S.C. § 6502(a)(1), N.M. Stat. § 56-10-19 and 11 U.S.C. § 550)**

55.    The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 54 above as if set forth here.

56.    The claims of the Survivors arose before the DLF Trust Transfers.

57.    ASF did not receive reasonably equivalent value in exchange for making the DLF Trust Transfers to the DLF Trust because the DLF Trust did not provide ASF with any consideration whatsoever for the DLF Trust Transfers.

58.    At the time of the DLF Trust Transfers, ASF was insolvent or became insolvent as a result of the DLF Trust Transfers.

59.    The DLF Trust Transfers are avoidable pursuant to Bankruptcy Code section 544(b) and New Mexico Statute section 56-10-19, as well as 26 U.S.C. section 6502(a)(1).

60.    The DLF Trust was the initial transferee of the DLF Trust Transfers.

61.    ASF's estate is entitled to recover the DLF Trust Transfers, or the value thereof, pursuant to Bankruptcy Code section 550.

14

## FOURTH CLAIM FOR RELIEF
### (Against the Trustees and Parishes)

### (Avoidance and Recovery of Incorporation Transfers
### Pursuant to 11 U.S.C. §§ 544(b), 26 U.S.C. § 6502(a)(1),
### 28 U.S.C. § 3304(b)(1)(A), N.M. Stat. § 56-10-18A(1) and 11 U.S.C. § 550)

62.    The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1 through 61 above as if fully set forth here.

63.    Prior to January 1, 2013, ASF caused the incorporation of its previously

unincorporated Parishes.  To the extent that incorporation of the Parishes resulted in the transfer

of any beneficial interests in property (the "**Incorporation Transfers**") by enabling the Parishes

to become trust beneficiaries, the Committee seeks to avoid and recover such Incorporation

Transfers hereunder.

64.    ASF made the Incorporation Transfers with the intent to hinder, delay, or

defraud ASF's creditors, including, but not limited to, the Survivors who had (and still have)

claims against ASF for sexual abuse.

65.    ASF's creditors' claims arose either before or after the Incorporation

Transfers.

66.    The Incorporation Transfers are avoidable pursuant to Bankruptcy Code

section 544(b) and New Mexico Statute 56-10-18A(1) , as well as 26 U.S.C. section 6502(a)(1)

and 28 U.S.C. section 3304(b)(1)(A).

67.    The DLF Trust is the entity for whose benefit the Incorporation Transfers

were made.

DOCS_SF:102819.8 05066/002

68.     ASF's estate is entitled to recover the DLF Trust Transfers, or the value thereof, pursuant to Bankruptcy Code section 550.

## FIFTH CLAIM FOR RELIEF
### (Against the Trustees and Parishes)

### (Avoidance and Recovery of Incorporation Transfers
### Pursuant to 11 U.S.C. §§ 544(b), 26 U.S.C. § 6502(a)(1),
### 28 U.S.C. § 3304(b)(1)(B), N.M. Stat. § 56-10-18A(2) and 11 U.S.C. § 550)

69.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 68 above as if set forth here.

70.     ASF did not receive reasonably equivalent value in exchange for making the Incorporation Transfers because neither the Parishes nor the DLF Trust provided ASF with any consideration for the Incorporation Transfers.

71.     At the time of the Incorporation Transfers, ASF (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of ASF were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed, that ASF would incur debts beyond its ability to pay as they became due.  Among other things, ASF's liabilities were greater than its assets due to the claims of Survivors at the time the Incorporation Transfers were made by ASF.

72.     ASF's creditors' claims arose either before or after the Incorporation Transfers.

73.     The Incorporation Transfers are avoidable pursuant to Bankruptcy Code section 544(b) and New Mexico Statute section 56-10-18A(2), as well as 26 U.S.C. section 6502(a)(1) and 28 U.S.C. section 3304(b)(1)(B).

74.     The DLF Trust is the entity for whose benefit the Incorporation Transfers were made.

75.     ASF's estate is entitled to recover the Incorporation Transfers, or the value thereof, pursuant to Bankruptcy Code section 550.

**SIXTH CLAIM FOR RELIEF**
**(Against the Trustees and Parishes)**

**(Avoidance and Recovery of Incorporation Transfers Pursuant to**
**11 U.S.C. § 544(b), 26 U.S.C. § 6502(a)(1), N.M. Stat. § 56-10-19 and 11 U.S.C. § 550)**

76.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 75 above as if set forth here.

77.     The claims of the Survivors arose before the Incorporation Transfers.

78.     ASF did not receive reasonably equivalent value in exchange for making the Incorporation Transfers because neither the DLF Trust nor the Parishes provided ASF with any consideration for the Incorporation Transfers.

79.     At the time of the Incorporation Transfers, ASF was insolvent or became insolvent as a result of the Incorporation Transfers.

80.     The Incorporation Transfers are avoidable pursuant to Bankruptcy Code section 544(b) and New Mexico Statute section 56-10-19, as well as 26 U.S.C. section 6502(a)(1).

81.     The DLF Trust is the entity for whose benefit the Incorporation Transfers were made.

82. ASF's estate is entitled to recover the Incorporation Transfers, or the value thereof, pursuant to Bankruptcy Code section 550.

## SEVENTH CLAIM FOR RELIEF
### (Against the Trustees and Parishes)

### (Avoidance and Recovery of DLF Trust Transfers Pursuant to 11 U.S.C. §§ 548(e) and 550)

83. The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 82 above as if fully set forth here.

84. ASF was the settlor of the DLF Trust and made the DLF Trust Transfers.

85. ASF is a beneficiary of the DLF Trust because, among other things, the Indenture expressly states it is a Participant and the purpose of the DLF Trust is to support the religious, charitable and educational purposes of the Participants.

86. ASF made the DLF Trust Transfers with the actual intent to hinder, delay, or defraud ASF's creditors, including, but not limited to, the Survivors, to whom ASF was liable, or became liable, on or after the date of the DLF Trust Transfers.

87. The DLF Trust Transfers are avoidable pursuant to Bankruptcy Code section 548(e).

88. The DLF Trust was the initial transferee of the DLF Trust Transfers.

89. ASF's estate is entitled to recover the DLF Trust Transfers, or the value thereof, pursuant to Bankruptcy Code section 550.

## EIGHTH CLAIM FOR RELIEF
### (Against the Trustees and Parishes)

DOCS_SF:102819.8 05066/002

## (Turnover of Assets in the DLF Trust Under
## 11 U.S.C. §§ 541, 542, 544, and N.M. Stat. § 46A-5-505(A)(1)

90. The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 89 above as if fully set forth here.

91. The DLF Trust is revocable by ASF alone.

92. Under N.M. Stat. § 46A-5-505(A)(1), revocable trusts are subject to the interests of creditors.

93. Accordingly, ASF's creditors can reach all assets and income of the DLF Trust.

94. Section 544(a)(1) of the Bankruptcy Code and the *Order Conferring Standing* give the Committee, on behalf of ASF's estate, all of the rights and powers of a judgment creditor of ASF in its capacity as the settlor of the DLF Trust, including the creditors referred to in N.M. Stat. § 46A-5-505(A)(1).

95. All of the assets in the DLF Trust should be deemed subject to the claims of ASF's creditors and constitute property of ASF's estate under section 541(a) of the Bankruptcy Code.

96. The Trustees must turn over all of the assets in the DLF Trust to ASF's estate under Bankruptcy Code section 542(a).

97. Accordingly, the Committee prays for an order compelling the Trustees to turn over all of the assets in the DLF Trust to ASF's estate.

## NINTH CLAIM FOR RELIEF
### (Against the Trustees and Parishes)

DOCS_SF:102819.8 05066/002

**(Turnover of Assets in the DLF Trust Under
11 U.S.C. §§ 541, 542, 544, and N.M. Stat. § 46A-5-505(A)(2)**

98.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 97 above as if fully set forth here.

99.     ASF was the settlor of the DLF Trust and made the DLF Trust Transfers.

100.     ASF is a beneficiary of the DLF Trust because, among other things, the Indenture expressly states it is a Participant of the DLF Trust and the purpose of the DLF Trust is to support the religious, charitable, and educational purposes of the Participants.

101.     The DLF Trust is therefore a self-settled trust.

102.     Under New Mexico law, trusts in which the settlor is also a beneficiary of the trust are subject to the interests of creditors.  In particular, N.M. Stat. § 46A-5-505(A)(2) provides that creditors of the settlor of a self-settled trust may reach the maximum amount of assets and income that can be distributed to or for the benefit of the settlor.  Accordingly, ASF's creditors can reach all assets and income of the DLF Trust that can be distributed for the benefit of ASF.

103.     Section 544(a)(1) of the Bankruptcy Code and the *Order Conferring Standing* give the Committee, on behalf of ASF's estate, all of the rights and powers of a judgment creditor of ASF in its capacity as the settlor of the DLF Trust, including the creditors referred to in N.M. Stat. § 46A-5-505(A)(2).

104.     All of the assets in the DLF Trust should be deemed subject to the claims of ASF's creditors and constitute property of ASF's estate under section 541(a) of the Bankruptcy Code.

105.     The Trustees must turn over all of the assets in the DLF Trust to ASF's

estate under Bankruptcy Code section 542(a).

106.     Accordingly, the Committee prays for an order compelling the Trustees to

turn over all of the assets in the DLF Trust to ASF's estate.

## TENTH CLAIM FOR RELIEF
### (Against All Defendants)

**(Declaratory Relief: The Assets in the DLF Trust Are Property of ASF's Estate
Under 11 U.S.C. §§ 541(a)(1) and 544(a), and N.M. Stat. § 46A-5-505(A)(1) and (A)(2)**

107.     The Committee realleges and incorporates by reference each and every

allegation set forth in paragraphs 1 through 106 above as if fully set forth here.

108.     ASF contends that its estate has no rights to the assets in the DLF Trust or

the income derived therefrom and that those assets and income are not available to pay the

claims of its creditors, including the Survivors.

109.     An actual and justiciable controversy exists as to whether the DLF Trust is

subject to the claims of ASF's creditors, including the Survivors, under N.M. Stat. § 46A-5-

505(A)(1) and (A)(2) and whether the assets in the DLF Trust and income derived therefrom are

property of ASF's estate.

110.     Accordingly, the Committee respectfully prays for a judgment declaring

that the DLF Trust is subject to the claims of ASF's creditors and that the assets in the DLF

Trust, and income derived therefrom, constitute property of ASF's estate.

DOCS_SF:102819.8 05066/002

## ELEVENTH CLAIM FOR RELIEF
### (Against All Defendants)

**(Injunctive Relief: Compelling ASF to Revoke the DLF Trust and
Compelling the Trustees to Turn Over the Assets in the DLF Trust
Pursuant to N. M. Stat. § 46A-6-603 and 11 U.S.C. § 541(a)(1))**

111.　　The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 110 above as if fully set forth here.

112.　　The DLF Trust, by its terms, is revocable by ASF alone.

113.　　ASF owes fiduciary duties to its creditors, including the Survivors.

114.　　Under New Mexico Stat. § 46A-6-603, where the settlor has the capacity to revoke the trust, the rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor.

115.　　The Trustees' duties under the DLF Trust are owed exclusively to ASF estate and are not owed to the alleged beneficiaries of the DLF Trust.

116.　　No adequate remedy at law exists for ASF's ongoing failure to honor its fiduciary duties to its creditors, including the Survivors, by refusing to exercise its right to revoke the DLF Trust.

117.　　Irreparable harm will result to ASF's estate and its creditors, including the Survivors, if an injunction does not issue to compel: (i) ASF to revoke the DLF Trust; and (ii) the Trustees to turn over the assets in the DLF Trust to the ASF estate.

## TWELFTH CLAIM FOR RELIEF
### (Against All Defendants)

**(Declaratory Relief: The DLF Trust is Void because ASF,
as Beneficiary, Controls the DLF Trust and the Assets in the
DLF Trust Are Property of ASF's Estate under 11 U.S.C. § 541(a)(1))**

DOCS_SF:102819.8 05066/002

118.     The Committee realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 117 above as if fully set forth here.

119.     The Archbishop is the sole member of ASF, President of ASF, and a member of its Board of Directors.

120.     The Archbishop appoints and removes the Trustees of the DLF Trust, and holds power over the actions of the DLF Trust.

121.     ASF, through the Archbishop, controls the DLF Trust and all distributions from the DLF Trust.

122.     ASF is a beneficiary of the DLF Trust.

123.     ASF contends that its estate has no rights in the assets held in the DLF Trust, and the income derived therefrom.

124.     An actual and justiciable controversy exists as to whether the DLF Trust is void and unenforceable as the result of ASF's dominion and control of the DLF Trust.

125.     Accordingly, the Committee respectfully prays for a judgment declaring that the DLF Trust is void and/or otherwise unenforceable and the assets in the DLF Trust constitute property of ASF's estate under section 541(a) of the Bankruptcy Code.

**WHEREFORE**, the Committee prays for judgment as follows:

1.     That the DLF Trust Transfers are avoidable by ASF's estate as fraudulent transfers;

2.     That ASF's estate is entitled to recover the DLF Trust Transfers or the value thereof, in an amount to be determined, pursuant to Section 550 of the Bankruptcy Code;

DOCS_SF:102819.8 05066/002

3.      That the Incorporation Transfers are avoidable by ASF's estate as fraudulent transfers;

4.      That ASF's estate is entitled to recover the Incorporation Transfers or the value thereof, in an amount to be determined, pursuant to Section 550 of the Bankruptcy Code.

5.      For turnover of the assets in the DLF Trust, and the income derived therefrom, to the ASF chapter 11 estate;

6.      Declaring that the DLF Trust is void and unenforceable and the assets in the DLF Trust, and the income derived therefrom, constitute property of ASF's chapter 11 estate;

7.      Ordering (i) ASF to revoke the DLF Trust; and (ii) the Trustees to turn over the assets in the DLF Trust to the ASF estate.

8.      For prejudgment interest; and

9.      For such other and further relief as the Court may deem just and proper.

Dated:    October 29, 2020

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By      */s/ Kenneth H. Brown*
        James I. Stang (CA State Bar No. 94435)
        Kenneth H. Brown (CA Bar No. 100396)
        Gail S. Greenwood (CA Bar No. 169939)
        150 California Street, 15th Floor
        San Francisco, CA 94111
        Phone: (415) 263-7000
        Fax: (415) 263-7010
        Email: jstang@pszjlaw.com
               kbrown@pszjlaw.com
               ggreenwood@pszjlaw.com

        Attorneys for the Official Committee of
        Unsecured Creditors

# EXHIBIT A

# INDENTURE OF TRUST
## ARCHDIOCESE OF SANTA FE DEPOSIT AND LOAN FUND

This Indenture of Trust is made and entered into effective as of January 1, 2013, by and between the ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a corporation sole (herein referred to as the "Grantor") and the following Trustees listed with their respective offices:

> Rev. Msgr. Lambert J. Luna, Vicar General of the Archdiocese of Santa Fe
> Very Rev. John Cannon, Chancellor of the Archdiocese of Santa Fe
> Tony Salgado, Executive Director of Finance of the Archdiocese of Santa Fe
> Rev. Timothy A. Martinez, Chair of the Executive Board of the Presbyteral Council
> Rev. Clarence Maes, Vice-Chair of the Executive Board of the Presbyteral Council
> Rev. John Trambley, Secretary of the Executive Board of the Presbyteral Council
> Very Rev. James Marshall, At Large Member of the Executive Board of the Presbyteral Council
> Rev. Msgr. Bennett J. Voorhies, At Large Member of the Executive Board of the Presbyteral Council
> Jennifer Cantrell, Chair of the Finance Council of the Archdiocese of Santa Fe
> Bernard E. "Gig" Brummell, Chair of the Investment Committee of the Finance Council of the Archdiocese of Santa Fe
> Stan Sluder, Chair of the Real Estate Committee of the Finance Council of the Archdiocese of Santa Fe

and their respective successors in office, and additional Trustees as may be appointed pursuant to this Indenture of Trust (herein collectively referred to as the "Trustees", or individually as "Trustee").

### WITNESS:

WHEREAS, the Grantor desires by the terms of this Indenture of Trust to establish an irrevocable charitable trust; and

WHEREAS, the Grantor intends from time to time to make contributions and deposits to the trust and that the trust receive deposits from Participants, as hereinafter defined; and

WHEREAS, such contributions and deposits shall constitute, as and when received by the Trustees, a trust fund to be held for the purposes hereinafter set forth; and

WHEREAS, the Grantor desires that the Trustees hold and administer such trust fund and the Trustees have agreed to hold, manage and administer said trust fund pursuant to the terms of this Indenture of Trust; and

#5145.1

WHEREAS, the Grantor intends that the Trustee hold legal title of the trust fund exclusively for the benefit of each respective Participant. Each Participant is the beneficial owner of its portion or share of the trust fund, in the civil law sense, and such portion belongs, in the Canon Law sense, to the respective Participant (or that Participant's canonical administrator in the case of a Participant that is not a Parish or other juridic person under Canon Law, as defined below).

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, the Grantor and the Trustees do hereby covenant and agree as follows:

1.   **Trust.**

By the terms of this Indenture of Trust, Grantor establishes an irrevocable charitable trust to be known as the Archdiocese of Santa Fe Deposit and Loan Fund.

2.   **Definitions.**

As used herein, the following terms shall be defined as set forth below:

a.      "Archbishop of Santa Fe" or "Archbishop" shall mean the person duly appointed under Canon Law holding, in his official and not personal capacity, the office of Archbishop of the Archdiocese of Santa Fe, or his successors in office, or in case of vacancy in the office of the Archbishop of Santa Fe, the duly appointed Administrator of the Archdiocese of Santa Fe.

b.      "Archdiocese of Santa Fe" shall mean that juridic person recognized under Canon Law as an archdiocese, located in New Mexico and known as the Archdiocese of Santa Fe.

c.      "Canon Law" shall refer to the then current *Code of Canon Law* of the Roman Catholic Church.

d.      "Code" shall mean the Internal Revenue Code of 1986, as the same may be amended.

e.      "Participants" shall mean the Grantor, Parish Corporations established in the territorial boundaries of the Archdiocese of Santa Fe and certain affiliated organizations which are subject to the canonical administration of the Archbishop of Santa Fe under Canon Law, and approved by the Grantor for participation in the Trust, all of which are exempt from tax under Section 501(c)(3) of the Code.

#5145.2

f.  "Securities or Other Property" shall mean all forms of personal property, including, without limitation, any interest in a corporation (including common and preferred stocks and stock options), bonds, notes or other evidences of indebtedness or ownership whether unsecured or secured by mortgages on real or personal property wherever situated.

g.  "Trust" shall mean the Trust formed pursuant to this Indenture of Trust and which is known as the Archdiocese of Santa Fe Deposit and Loan Fund.

**3.  Trust Fund.** The Trustees shall receive contributions and deposits as may be made to them from time to time by Grantor and the Participants in the form of cash and Securities or Other Property acceptable to the Trustees. All such contributions so received and the net income therefrom shall be known as the Trust Fund. The Trust Fund shall be held, invested, managed, administered and distributed by the Trustees pursuant to the terms of this Indenture of Trust.

**4.  Purposes.**

The Trust shall support the religious, charitable and educational purposes (within the meaning of Section 501(c)(3) of the Code) of the Participants. Within said religious, charitable and educational purposes, it is intended that the following support services be provided to the Participants:

4.1  to invest the cash and Securities or Other Property deposited by the Participants and to return such assets to the Participants for their respective religious, charitable and educational purposes;

4.2  to pay interest and other forms of income or gains to the Participants with respect to their deposits in the Trust Fund in such manner and such amounts as may be determined by the Trustees; and

4.3  to make loans to the Participants for their charitable purposes from the Trust Fund on terms and conditions determined by the Trustees and to charge interest on such loans at rates approved by the Trustees, all subject to the standards, terms and conditions set forth in the Bylaws;

4.4  to segregate assets within the Trust Fund into separate funds or other separate accounts as determined by the Trustees.

#5145.3

## 5. Trustees.

The powers of control and management of the Trust shall rest exclusively in the Trustees who shall be at least three (3) and not more than fifteen (15) persons, each of whom shall be appointed by and serve at the pleasure of the Archbishop. Trustees shall be appointed as *ex officio* Trustees, with vote, by virtue of the office they hold. The designation of the offices by which persons are to be appointed as Trustees, *ex officio*, and the terms of other appointed Trustees, shall be set forth in the Bylaws. A Trustee may resign at any time by giving written notice to the Archbishop. No Trustee duly appointed shall be required to give bond or other security. The Trustees shall possess all powers granted to them by law to carry out the purposes of the Trust and administer the Trust Fund.

## 6. Bylaws

The Trustees shall adopt Bylaws, which shall control the operation of the Trust and which shall be subject to the approval of the Archbishop. Any amendments to such Bylaws shall also require the approval of the Archbishop as a condition to their becoming effective. To the extent the provisions of the Bylaws shall ever conflict with provisions of this Indenture of Trust, the provisions of this Indenture of Trust shall control.

## 7. Trust Administration.

7.1 Chairperson.

The Trustees shall elect annually one of the Trustees to serve as Chairperson. The Chairperson shall preside at meetings of the Trustees. In the absence of the Chairperson, one of the other Trustees shall be selected to carry out the responsibilities of the Chairperson. The Trustees by resolution may authorize the Chairperson, or one or more other Trustees, to execute documents and perform or delegate to others the responsibility for the performance of administrative functions for the Trust and the Trustees. The Trustees may also delegate to others, who are not Trustees, the responsibility for performance of administrative functions, including the execution of documents, for the Trust.

7.2 Secretary.

The Trustees shall elect annually one of the Trustees to serve as Secretary. The Secretary shall have responsibility for the taking and keeping of all minutes of the meetings of the Trustees in a book to be kept for that purpose. The Secretary shall give, or cause to be given, notice

Case 20-01061-t    Doc 1    Filed 10/29/20    Entered 10/29/20 14:21:52 Page 29 of 51

#5145.4

of all meetings of the Trustees, and shall perform such other duties as may be prescribed by the Trustees. In the absence of the Secretary, one of the other Trustees shall be selected to carry out the responsibilities of the Secretary.

7.3     Additional Officers.

The Trustees may, by resolution, elect other officers for the Trust who shall have such duties as shall be determined by the Trustees.

**8.     Meetings of Trustees**

8.1     Place of Meeting.

All meetings of the Trustees shall be held at such place within the territorial boundaries of the Archdiocese of Santa Fe as may be designated for that purpose from time to time by resolution or written consent of the Trustees.

8.2     Annual Meeting.

The annual meeting of the Trustees shall be held at such time as shall be approved by resolution or written consent of the Trustees.

8.3     Regular Meetings.

Regular meetings of the Trustees shall be held at least semi-annually.

8.4     Special Meetings.

Special meetings of the Trustees may be called at any time by the Chairperson or a majority of the Trustees.

8.5     Notice of Meetings.

Notice of the time and place of all annual, regular and special meetings shall be sent by first class mail, personal delivery, telephone or email to each Trustee. In case the notice is mailed, it shall be deposited in the United States mail at least seven (7) days before the time of the holding of the meeting. In case the notice is delivered personally, by telephone or email, it shall be delivered at least forty-eight (48) hours before the time of the meeting. The place of the meeting shall be stated in the notice.

8.6     Quorum.

Sixty percent (60%) of the Trustees shall constitute a quorum for the transaction of business at any meeting of the Trustees. A vote of a majority of the Trustees present at any duly held meeting of the Trustees at which there is a quorum shall be required for the transaction of business.

8.7       Telephone Conference.

The Trustees may participate in a meeting of the Trustees by means of telephone conference or similar communications equipment whereby all persons participating in the meeting can hear each other, and participation in a meeting in this manner shall constitute presence in person at the meeting.

8.8       Validation of Meeting.

The transactions of the Trustees at any meeting, however called or noticed, or wherever held, shall be as valid as though they had taken place at a meeting held after call and notice if a quorum be present and if, either before or after the meeting, each Trustee signs a written waiver of notice, a consent to the holding of such meeting and an approval of the minutes thereof. All such waivers, consents or approvals shall be filed with the Trust records and made a part of the minutes of the meeting.

8.9       Action without Meeting.

Any action required or permitted to be taken by the Trustees may be taken without a meeting if each Trustee signs a written consent which sets forth the action taken. Such written consent shall be filed with the minutes of the proceedings of the meeting. Such action by written consent shall have the same force and effect as a unanimous vote of the Trustees. The Secretary shall file the consents with the minutes of the meetings of the Trustees. Any certificate or other document filed on behalf of this Trust relating to an action by the Trustees without a meeting shall state that the action was taken by a unanimous written consent of the Trustees without a meeting.

**9.      Compensation of Trustees.**

The Trustees shall not be compensated for their services, provided that nothing contained herein shall be construed to preclude a Trustee from serving the Trust in any other capacity and receiving compensation therefor.

**10.     Insurance.**

The Trustees are authorized to obtain any type of insurance deemed necessary or appropriate by the Trustees, including, but not limited to, comprehensive general liability insurance and directors and officers liability insurance.

### 11. Payment of Expenses of Trustees.

The expenses incurred by the Trustees in the administration of the Trust, including fees for legal services and auditing services rendered to the Trustees, insurance premiums and assessments and all other proper charges and expenses of the Trustees and of their agents and counsel, shall be paid from the Trust Fund. All taxes of any and all kinds whatsoever that may be levied or assessed under existing or future laws upon the Trust Fund or the income thereof, and investment expenses, shall be paid from the Trust Fund.

### 12. Indemnification of Trustees.

Each Trustee and member of a committee of the Trust and his or her heirs and legal representatives, hereinafter collectively referred to as "Covered Persons," shall to the extent permitted for corporations and in accordance with standards and procedures contained in N.M.S.A. 53-8-26, be indemnified and held harmless by the Trust against any claims, demands, liabilities, expenses, counsel fees and costs reasonably incurred by him or her, his or her estate or his or her heirs in connection with, related to, or arising out of any action, suit, proceeding or claim in which he or she is made a party by reason of his or her being, or having been, such Covered Person; provided, that in no case shall the Trust indemnify and hold such Covered Person harmless with respect to any matters as to which he or she is liable for malfeasance in the performance of his or her duties as such Covered Person. The indemnification herein provided shall also apply to any amount paid in compromise of any action, suit, proceeding or claim asserted against such Covered Person (including expenses, counsel fees and costs reasonably incurred in connection therewith) provided the Trustees shall have first approved such proposed compromise settlement, but in taking such action any Trustee involved shall not be qualified to vote thereon. In determining whether or not a Covered Person was liable for malfeasance in relation to such matters, the Trustees may rely conclusively upon an opinion of independent legal counsel selected by the Trustees.

Additionally, the Trust may provide indemnification to any other employee or agent of the Trust to the extent permitted for corporations by the laws of the State of New Mexico and as the same may be amended.

The right of indemnification herein provided shall not be exclusive of any other rights to which such Covered Person may be lawfully entitled.

#5145.7

13. **Reports of Trustees.**

The Trustees shall as soon as practicable, but in no event later than five (5) months after the end of each fiscal year of the Trust, provide to the Archbishop (i) its revenue and expense statement for such fiscal year and (ii) its balance sheet as of the end of such fiscal year, each accompanied by the certificate or opinion of a firm of independent certified public accountants selected by the Trustees and approved by the Archbishop, which certificate or opinion may be rendered as part of the audit of the Archdiocese of Santa. The Trustees shall furnish to the Archbishop such other reports as may be requested by the Archbishop.

14. **Termination.**

The Grantor may terminate the Trust by delivering written notice to the Trustees.

Upon receipt of such notice of termination, the Trustees shall dispose of and apply the Trust Fund in accordance with the religious, charitable and educational purposes of the Trust. The Trustees shall reserve such sums of money as they deem necessary to pay expenses, charges or liabilities for which the Trust may be liable. The Trustees shall pay such expenses, charges or liabilities promptly. Any balance remaining after the payment of such charges, fees and expenses shall be distributed pro rata to the Participants in proportion to the amounts of the deposits of each Participant, plus accrued interest, less any loan balance outstanding and interest accrued thereon, if any, provided that each Participant to whom a distribution is to be made is an organization which at the time qualifies as exempt under Section 501(c)(3) of the Code, with any residuary amount being distributed to the Grantor, provided that, if Grantor does not qualify as exempt under Section 501(c)(3) of the Code, the residue shall be distributed to one or more exempt organizations designated by the Archbishop.

15. **Amendment.**

This Indenture of Trust is irrevocable and may not be amended or modified except that (i) if for any reason the Trust does not comply with the Canon Law, such changes as are necessary to so comply may be made by the Archbishop, (ii) if for any reason whatsoever the Trust fails to qualify as a tax exempt charitable trust, such changes as are necessary for the Trust to so qualify may be made by the Trustees, (iii) the Trustees may make changes which do not materially adversely affect the deposits of any Participants who have deposits with the Trust. Any amendment to the Trust by the Trustees shall require the approval of the Archbishop.

-8-

#5145.8

16.  **Claims of Creditors.**

The Trust Property shall not be subject to seizure, levy, attachment, garnishment or sequestration by any creditor of Grantor or any Participant under any writ or proceeding at law or in equity. No assignment of any part of the income or principal of this Trust shall be valid, nor shall such be accepted by Trustee, but all payments, whether of income or principal, shall be made by the Trustee as provided herein. The interest of any beneficiary shall not be subject to claims of any creditor or other person, nor to legal process through attachment, garnishment, execution, or other legal or equitable charge or lien brought by or in favor of any creditor, and may not be otherwise voluntarily or involuntarily encumbered.

17.  **Organization and Operation as Tax Exempt Entity.**

17.1  Notwithstanding any other provisions of this Trust, the Trustees shall not be authorized to carry on, nor shall they carry on, any activities not permitted to be carried on (i) by an organization exempt from Federal Income Tax under Section 501(c)(3) of the Code, or (ii) by an organization, contributions to which are deductible under Section 170(c)(2) of the Code.

17.2  As required by Section 501(c)(3) of the Code, no part of the net earnings of the Trust Fund shall inure to the benefit of any private shareholder or individual and no substantial part of the activities of the Trust shall consist of carrying on propaganda or otherwise attempting to influence legislation or participating in or intervening in (including the publishing or distributing of statements) any political campaign on behalf of (or in opposition to) any candidate for public office.

17.3  In the event that the Internal Revenue Service determines that this Trust is not tax exempt, the Trust created by this instrument may, at Grantor's option, be terminated and the assets of the Trust shall be distributed in accordance with paragraph 14 hereof.

18.  **Situs.**

This Indenture of Trust and the Trust created hereby shall be construed, regulated and administered under the laws of the State of New Mexico. The registered office and principal place of business and administration of the Trust shall be the office of the Chancellor of the Archdiocese of Santa Fe, which shall be in Bernalillo County, New Mexico. The venue of any proceeding involving the Trustee shall likewise be determined by the laws of the State of New Mexico. All contributions and deposits to the Trust shall be deemed to be charitable transactions occurring wholly within the State of New Mexico.

-9-

19. **Severability.**

In the event that any of the provisions of this Indenture of Trust are held to be invalid or unenforceable, neither this Indenture of Trust generally nor the remainder of this Indenture of Trust shall thereby be rendered invalid or unenforceable, but instead each such provision, and (if necessary) other provisions hereof shall be reformed by a court of competent jurisdiction so as to effect, insofar as is practicable, the intention of the Grantor as set forth in this Indenture of Trust, provided, however, that if such court is unable or unwilling to effect such reformation, the remainder of the Indenture of Trust shall be construed and given effect as if such invalid or unenforceable provisions had not been made a part hereof.

20. **Canon Law.**

The provisions of this Indenture of Trust and the Bylaws shall be interpreted in accordance with Canon Law, and further, shall be subject to the prescriptions of the then current *Code of Canon Law* and the particular law of the Archdiocese of Santa Fe. In case of conflict, the provisions of Canon Law shall control.

IN WITNESS WHEREOF, this Indenture of Trust has been executed as of the day and year first above written.

**GRANTOR:**

ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a corporation sole

By: _Michael J. Sheehan_

† Most Rev. Michael J. Sheehan,
Archbishop and President

**TRUSTEES:**

_Msgr. Lambert Joseph Luna_

Rev. Msgr. Lambert J. Luna, Vicar General of the Archdiocese of Santa Fe

-10-

**#5145.10**

_____

Very Rev. John Cannon, Chancellor of the
Archdiocese of Santa Fe


_____

Tony Salgado, Executive Director of Finance of the
Archdiocese of Santa Fe


_____

Rev. Timothy A. Martinez, Chair of the Executive
Board of the Presbyteral Council of the Archdiocese
of Santa Fe


_____

Rev. Clarence Maes, Vice-Chair of the
Executive Board of the Presbyteral Council of the
Archdiocese of Santa Fe


_____

Rev. John Trambley, Secretary of the Executive Board
of the Presbyteral Council of the Archdiocese of Santa
Fe


_____

Very Rev. James Marshall, At Large Member of the
Executive Board of the Presbyteral Council of the
Archdiocese of Santa Fe


_____

Rev. Msgr. Bennett J. Voorhies, At Large Member
of the Executive Board of the Presbyteral Council of
the Archdiocese of Santa Fe

-11-

**#5145.11**

_(signature)_

Jennifer Cantrell, Chair of the Finance Council of
the Archdiocese of Santa Fe

_(signature)_

Bernard E. "Gig" Brummell, Chair of the
Investment Committee of the Finance Council of
the Archdiocese of Santa Fe

_(signature)_

Stan Sluder, Chair of the Real Estate Committee of
the Finance Council of the Archdiocese of Santa Fe


STATE OF NEW MEXICO          )
                             )  ss.
COUNTY OF BERNALILLO         )

This instrument was acknowledged before me on **March 8**, 2013 by the Most Rev.
Michael J. Sheehan, Archbishop and President of the Roman Catholic Church of the Archdiocese of
Santa Fe, a corporation sole, on behalf of the corporation.

_(signature)_

NOTARY PUBLIC

My commission expires: 2/15/16


STATE OF NEW MEXICO          )
                             )  ss.
COUNTY OF BERNALILLO         )

This instrument was acknowledged before me on **March 8**, 2013 by the Rev. Msgr.
Lambert J. Luna, Vicar General of the Archdiocese of Santa Fe..

_(signature)_

NOTARY PUBLIC

My commission expires: 2/15/16

STATE OF NEW MEXICO          )

-12-

**#5145.12**

STATE OF NEW MEXICO        )
                          )  ss.
COUNTY OF BERNALILLO       )

This instrument was acknowledged before me on *March 8*, 2013 by the Very Rev. John Cannon, Chancellor of the Archdiocese of Santa Fe.

*Gloria V. Sisneros*
NOTARY PUBLIC

My commission expires: *2/15/16*


STATE OF NEW MEXICO        )
                          )  ss.
COUNTY OF BERNALILLO       )

This instrument was acknowledged before me on *March 8*, 2013 by the Tony Salgado, Executive Director of Finance of the Archdiocese of Santa Fe.

*Gloria V. Sisneros*
NOTARY PUBLIC

My commission expires: *2/15/16*


STATE OF NEW MEXICO        )
                          )  ss.
COUNTY OF BERNALILLO       )

This instrument was acknowledged before me on *March 8*, 2013 by Rev. Timothy A. Martinez, Chair of the Executive Board of the Presbyteral Council of the Archdiocese of Santa Fe.

*Gloria V. Sisneros*
NOTARY PUBLIC

My commission expires: *2/15/16*

-13-

**#5145.13**

STATE OF NEW MEXICO )
                               ) ss.
COUNTY OF BERNALILLO )

This instrument was acknowledged before me on *March 8*, 2013 by Rev. Clarence Maes, Vice-Chair of the Executive Board of the Presbyteral Council of the Archdiocese of Santa Fe.

NOTARY PUBLIC

My commission expires: 2/15/16


STATE OF NEW MEXICO )
                               ) ss.
COUNTY OF BERNALILLO )

This instrument was acknowledged before me on *March 8*, 2013 by Rev. John Trambley, Secretary of the Executive Board of the Presbyteral Council of the Archdiocese of Santa Fe.

NOTARY PUBLIC

My commission expires: 01/28/2016

OFFICIAL SEAL
June A. Chávez
NOTARY PUBLIC-STATE OF NEW MEXICO
My commission expires: 01/28/2016


STATE OF NEW MEXICO )
                               ) ss.
COUNTY OF BERNALILLO )

This instrument was acknowledged before me on *March 8*, 2013 by Very Rev. James Marshall, At Large Member of the Executive Board of the Presbyteral Council of the Archdiocese of Santa Fe.

NOTARY PUBLIC

My commission expires: 01/28/2016

OFFICIAL SEAL
June A. Chávez
NOTARY PUBLIC-STATE OF NEW MEXICO
My commission expires: 01/28/2016

-14-

#5145.14

#5145.15

STATE OF NEW MEXICO )
            ) ss.
COUNTY OF BERNALILLO )

   This instrument was acknowledged before me on _March 13_ 2013 by Rev. Msgr. Bennett J. Voorhies, At Large Member of the Executive Board of the Presbyteral Council of the Archdiocese of Santa Fe.

           _Jane A. Chávez_
           NOTARY PUBLIC

My commission expires: _01/28/2016_

       OFFICIAL SEAL
       June A. Chávez
       NOTARY PUBLIC-STATE OF NEW MEXICO
       My commission expires: _01/28/2016_


STATE OF NEW MEXICO )
            ) ss.
COUNTY OF BERNALILLO )

   This instrument was acknowledged before me on _March 8_, 2013 by Jennifer Cantrell, Chair of the Finance Council of the Archdiocese of Santa Fe.

           _Glorine V. Sisneros_
           NOTARY PUBLIC

My commission expires: _2/15/16_


STATE OF NEW MEXICO )
            ) ss.
COUNTY OF BERNALILLO )

   This instrument was acknowledged before me on _March 8_, 2013 by Bernard E. "Gig" Brummell, Chair of the Investment Committee of the Finance Council of the of the Archdiocese of Santa Fe.

           _Glorine V. Sisneros_
           NOTARY PUBLIC

My commission expires: _2/15/16_

**#5145.16**

OFFICIAL SEAL
June A. Chávez
NOTARY PUBLIC-STATE OF NEW MEXICO
My commission expires:

**#5145.17**

STATE OF NEW MEXICO )
                             )  ss.
COUNTY OF BERNALILLO )

    This instrument was acknowledged before me on March 8, 2013 by Stan Sluder, Chair of the Real Estate Committee of the Finance Council of the Archdiocese of Santa Fe.

_June A. Chávez_
NOTARY PUBLIC

My commission expires: 01/28/2016

OFFICIAL SEAL
June A. Chávez
NOTARY PUBLIC-STATE OF NEW MEXICO
My commission expires: 01/28/2016

**#5145.18**

**#5145.19**

# EXHIBIT B

# BYLAWS
## OF
## ARCHDIOCESE OF SANTA FE DEPOSIT AND LOAN FUND

These Bylaws have been duly adopted by the Trustees of the Archdiocese of Santa Fe Deposit and Loan Fund (the "Fund" or "Trust") and approved by the Archbishop of Santa Fe ("Archbishop") to define further the administration of the Fund by the Trustees. In case of conflict between the provisions of the Indenture of Trust of the Archdiocese of Santa Fe Deposit and Loan Fund dated effective January 1, 2013 (the "Indenture of Trust") and these Bylaws, the Indenture of Trust shall control. Capitalized terms in these Bylaws which are not otherwise defined shall be defined as set forth in the Indenture of Trust.

1. **Trustees.**

1.1 <u>Ex Officio Trustees</u>. The persons holding the following offices or positions are suggested for appointment as Trustees, with vote, by the Archbishop. The Archbishop may, in his discretion, choose to not appoint persons occupying these offices or positions as Trustees.

- Vicar General of the Archdiocese of Santa Fe
- Chancellor of the Archdiocese of Santa Fe
- Each member of the Executive Board of the Presbyteral Council of the Archdiocese of Santa Fe
- Executive Director of Finance of the Archdiocese of Santa Fe
- Chair of the Finance Council of the Archdiocese of Santa Fe
- Chair of the Investment Committee of the Finance Council of the Archdiocese of Santa Fe
- Chair of the Real Estate Committee of the Finance Council of the Archdiocese of Santa Fe

Ex officio Trustees shall serve as Trustees so long as they hold the office or position by virtue of which they have been appointed as Trustees. Ex officio Trustees may be removed at any time by the Archbishop. Ex officio Trustees may be reappointed as Appointed Trustees should they cease to hold the position or office by virtue of which they have been appointed as Trustees. Trustees shall act at all times with respect to the administration of the Fund taking into account, and subject to, the prescriptions of the then current *Code of Canon Law* and the particular law of the Archdiocese of Santa Fe.

1.2 <u>Appointed Trustees</u>. The remaining Trustees, if any, shall be appointed by the Archbishop, not to exceed four (4) additional Trustees. They shall be appointed to staggered three (3) year terms so that the terms of approximately one-third (1/3) of the Appointed Trustees expire each year. Appointed Trustees may be appointed to two (2) successive full three (3) year terms after which they shall not be eligible to serve as an Appointed Trustee until one (1) year has elapsed since the expiration of their last term as Trustee. Appointed Trustees may be removed at any time by the Archbishop.

**#5148.1**

**2.      Funds.**

There shall initially be established a Depositors' Fund within the Trust. Additional Funds may be established by the Trustees.

2.1      Depositors' Fund.

2.1.1   Assets.   The Depositors' Fund shall hold all deposits of Participants ("Depositors' Fund Assets").

2.1.2   Investment of Assets.  Depositors' Fund Assets shall be invested by the Investment Committee, subject to the ultimate authority of the Trustees in accordance with the provisions of these Bylaws and investment guidelines to be developed by the Investment Committee and adopted by the Trustees.

2.1.3   Deposits, Withdrawals and Loans.  Deposits to, and withdrawals and loans from, the Depositors' Fund Assets shall be made in accordance with the provisions of these Bylaws and guidelines to be developed by the Project and Loan Committee and adopted by the Trustees.

2.1.4   Management Fees.  Accounts of Participants in the Depositors' Fund shall not be charged a management fee by the Trust, but may be assessed a prorata portion of the costs and expenses of administering and managing the Fund, including compensation for the accounting and management services provided by the Roman Catholic Church of the Archdiocese of Santa Fe, a corporation sole, as described in the D&L Fund Support Services Agreement entered into between the Fund and the Archdiocese.

**3.      Committees.**

The Trust shall have an Investment Committee and a Project and Loan Committee as described herein. Additional committees may be established by the Trustees.

3.1      Investment Committee.   The Investment Committee shall have responsibility for the investment of the assets of the Trust in accordance with the principles set forth in Section 4 and guidelines to be developed by the Investment Committee and approved by the Trustees and subject to the ultimate authority of the Trustees.

3.2      Project and Loan Committee.   After approval of a project or loan by the College of Consultors of the Archdiocese of Santa Fe, the Project and Loan Committee shall have responsibility for (i) reviewing applications for projects and for loans from the Trust, and (ii) developing, and delivering to the Archbishop, recommendations as to whether project and/or loansshall be approved or denied. In developing such recommendations, the Project and Loan Committee shall adhere to the principles set forth in Section 5 and guidelines developed by the Project and Loan Committee, which guidelines shall be approved by the Trustees.

3.3 <u>Committee Members</u>. The Finance Council of the Archdiocese of Santa Fe shall serve as the Investment Committee and as the Project and Loan Committee. Members of Committees other than the Investment Committee and the Project and Loan Committee shall be appointed by the Trustees and shall serve at the pleasure of the Trustees. Each committee whose members are appointed pursuant to this Section shall be composed of at least two (2) Trustees. Additional persons who are not Trustees may be appointed as members of committees. The Trustees shall appoint a chairperson for each committee whose members are appointed pursuant to this section.

3.4 <u>Committee Meetings.</u> Committees shall hold meetings at such times as determined by the committee members, except that the chairperson may call a special meeting of the committee at any time upon three days' notice. The majority of committee members shall constitute a quorum and a vote of the majority of the committee members present at a committee meeting at which a quorum is present shall be required for the transaction of business.

**4.      Investments.**

The assets of the Trust shall be invested by the Investment Committee in accordance with the following principles:

4.1      Assets held within the Trust may be co-mingled for investment purposes.

4.2      Participant deposits in the Depositors' Fund will be expressed and reported in terms of dollars on deposit.

4.3      Income of Participants in the Depositors' Fund will be based on interest rates which shall be developed jointly by the Investment Committee and the Project and Loan Committee and shall require approval by the Trustees.

**5.      Projects and Loans.**

Withdrawals and loans may be made from the Depositors' Fund Assets of the Trust in accordance with the following principles, and as limited by the then current Archdiocese of Santa Fe Parish Administrative Manual ("PAM").

5.1      Loans may be made only to organizations which are Participants in the Archdiocese of Santa Fe Deposit and Loan Fund.

5.2      The then current Project Request Form in the PAM used by the Participant to apply to the College of Consultors shall be used to apply for any loan from the Fund.

5.3      All projects and loans under Three Million Dollars ($3,000,000) but greater than One Hundred Fifty Thousand Dollars ($150,000) shall be approved by the Project and Loan Committee and, then, shall be approved by the Archbishop. All projects and loans of Three Million Dollars ($3,000,000) or more shall be approved by the Project and Loan Committee, then by the Trustees and, finally, by the Archbishop. The Archbishop may delegate

#5148.3

this approval authority to the Project and Loan Committee for loans less than an amount determined, from time to time, by the Archbishop.

        5.4     The purpose of making loans from the Trust to Participants is to support and enhance the religious, charitable and educational purposes of the Participants. In evaluating loan applications, the Trustees or their delegees have an obligation to afford reasonable protection to the Participants who have funds on deposit in the Depositors' Fund of the Trust.

        5.5     Interest rates, terms and guidelines for loans shall be developed by the Project and Loan Committee.

### 6.    Instruments.

Each Participant shall sign a Participation Agreement. All loans from the Trust shall be evidenced by written instruments setting forth the relevant terms and conditions. Such instruments shall be developed by the Trustees. Copies of all Participation Agreements and loan documents shall be maintained by the Trustees in accordance with guidelines to be adopted by the Trustees.

### 7.    Remedies in the event of Default.

In addition to any other remedy available at law, in the event of a default by a Participant on any loan from the Fund, the Trustees may freeze the Participant's fund(s) until satisfaction of the loan, or may offset such unpaid obligation against the defaulting Participant's fund(s) in the Depositors' Fund or any other Fund of the Trust, or both. Such right of offset shall be explicitly stated in the written instruments evidencing such loan, and shall be a condition to the granting of the loan.

### 8.    Amendments.

Any amendments of these Bylaws shall require the affirmative vote of the Trustees in accordance with the provisions of the Indenture of Trust and the written approval of the Archbishop. The provisions of these Bylaws shall be interpreted in accordance with the then current Roman Catholic *Code of Canon Law*.

Approved:

Date: Effective January 1, 2013

                               † Most Rev. Michael J. Sheehan,
                               Archbishop of the Archdiocese of Santa Fe

*Trustees' signatures to follow.*

#5148.4

Adopted: Effective January 1, 2013

_(signature)_
Rev. Msgr. Lambert J. Luna, Vicar
General of the Archdiocese of Santa Fe

_(signature)_
Tony Salgado, Executive Director of
Finance of the Archdiocese of Santa Fe

_(signature)_
Very Rev. John Cannon, Chancellor of
the Archdiocese of Santa Fe

_(signature)_
Jennifer Cantrell, Chair of the
Finance Council of the Archdiocese
of Santa Fe

_(signature)_
Rev. Timothy A. Martinez,
Chair of the Presbyteral Council of
the Archdiocese of Santa Fe

_(signature)_
Rev. Clarence Maes, Vice-Chair of the
Presbyteral Council of the Archdiocese
of Santa Fe

_(signature)_
Rev. John Trambley, Secretary of the
Presbyteral Council of the Archdiocese
of Santa Fe

_(signature)_
Rev. Msgr. Bennett J. Voorhies,
Member of the Presbyteral Council of the
Archdiocese of Santa Fe

_(signature)_
Very Rev. James Marshall, Member of the
Presbyteral Council of the Archdiocese
of Santa Fe

_(signature)_
Bernard E. "Gig" Brummell, Chair of the
Investment Committee of the Finance
Council of the Archdiocese of Santa Fe

_(signature)_
Stan Sluder, Chair of the Real Estate
Committee of the Finance Council of the
Archdiocese of Santa Fe

# FIRST AMENDMENT TO

## BYLAWS OF

## ARCHDIOCESE OF SANTA FE DEPOSIT AND LOAN FUND

The Bylaws of the Archdiocese of Santa Fe Deposit and Loan Fund are amended as follows:

1. The Episcopal Vicar is added to the list of suggested Ex officio Trustees in Section 1.1 of the Trust Bylaws.

2. Reference to the College of Consultors is deleted from the Bylaws. Accordingly

   a: The phrase "After approval of a project or loan by the College of Consultors of the Archdiocese of Santa Fe," is deleted from Section 3.2 of the Bylaws.

   b: The phrase "used by the Participant to apply to the College of Consultors" is deleted from Section 5.2 of the Bylaws.

3. The minimum amount of project and loan subject to Trust approval is modified as follows: "One Hundred Fifty Thousand Dollars ($150,000)" is deleted and the following inserted in its place: "Two Hundred Fifty Thousand Dollars ($250,000)" in Section 5.3 of the Bylaws.

The undersigned, being the duly elected Secretary of the Trust, hereby certifies the above First Amendment to the Bylaws of the Trust Fund was adopted by the Trustees of the Trust on November 16, 2016.

DATED: _____

Tony Salgado, Executive Director Finance, Secretary

APPROVED: _____

Archbishop John C. Wester, Archbishop of Santa Fe

#5146.1